UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ITAY GOLAN, individually and on behalf of others similarly situated,<br><br>                           Plaintiff,<br><br>          - against -<br><br>KALSHIEX LLC, KALSHI INC., KALSHI KLEAR LLC, KALSHI KLEAR INC., and KALSHI TRADING LLC,<br><br>                       Defendants. | **Case No.:**<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Itay Golan ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned attorneys, alleges upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.     This is a class action for damages, restitution, declaratory relief, and injunctive relief arising out of Defendants KALSHIEX LLC, KALSHI INC., KALSHI KLEAR LLC, KALSHI KLEAR INC., and KALSHI TRADING LLC (collectively "Defendants" or "Kalshi") operation, marketing, and settlement of a Kalshi prediction market titled "Ali Khamenei out as Supreme Leader?"

2.     Kalshi marketed this contract to retail users as a straightforward event contract: if Ali Khamenei left office before a specified deadline, the market would resolve to "Yes."

3.     Users who purchased "Yes" contracts reasonably understood that if Khamenei ceased serving as Supreme Leader before the contract deadline, those contracts would pay out as winning "Yes" contracts.

1

4.      Plaintiff purchased 1,436 "Yes" contracts in the "before April 1, 2026" Khamenei market at a total cost of approximately $589.59, or approximately $609.98 including fees, according to Kalshi's own communications.

5.      After reports that Khamenei had died, Kalshi did not settle the market as a standard binary "Yes" outcome. Instead, Kalshi invoked what it described as a "death carveout," "scalar settlement," and/or "last-traded fair price" methodology and settled Plaintiff's position at $0.29 per contract, for a total payout of approximately $416.44, substantially less than the full payout Plaintiff reasonably expected.

6.      Kalshi's own communications to Plaintiff were inconsistent, confusing, and contradictory. At different times, Kalshi stated that:

   a.  the market settled to a scalar value of $0.29 per contract;
   b.  Plaintiff's payout had already been credited;
   c.  users with positions acquired before death would be paid based on the last-traded fair price before death;
   d.  users who purchased after death at a higher price would be reimbursed up to cost of entry; and
   e.  "the price at 1:14 AM was 2c for Yes and 98c for No."

7.      These explanations are not consistent with one another and do not provide a clear, transparent, or intelligible basis for why Kalshi accepted users' money for "Yes" contracts while refusing to pay those contracts as full "Yes" winners after the event allegedly occurred.

8.      Kalshi also admitted that many users did not fully understand the rules for this market and that Kalshi needed to improve how those rules were surfaced to users.

9.      Plaintiff brings this action on behalf of himself and a nationwide class of similarly situated market participants who were injured by Defendants' deceptive, misleading, unfair, and

unlawful conduct in connection with the marketing, sale, and settlement of the subject Kalshi market.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which the matter in controversy, aggregated across all Class members, exceeds $5,000,000 exclusive of interest and costs; the proposed Class contains well over 100 members; and at least one member of the proposed Class is a citizen of a state different from at least one Defendant. Upon information and belief, the challenged market involved substantial nationwide trading volume and affected hundreds or thousands of retail users whose positions were settled, credited, reimbursed, or otherwise adjusted pursuant to the challenged methodology.

11. This Court has personal jurisdiction over Defendants because Defendants are headquartered in New York, operate and direct the challenged conduct from New York, and purposefully transact business throughout the United States, including in this District and with Plaintiff and Class members.

12. Venue is proper in this District under 28 U.S.C. § 1391(b) because one or more Defendants reside in this District and a substantial part of the events and omissions giving rise to the claims occurred in this District, including the design, operation, marketing, sale, and settlement of the subject Kalshi contracts.

## PARTIES

13. Plaintiff Itay Golan is a natural person and citizen of New York. He maintained an account on the Kalshi platform and purchased contracts in the "Ali Khamenei out as Supreme Leader?" market.

14.    Defendant KalshiEX LLC is, upon information and belief, a Delaware limited liability company with its principal place of business at 594 Broadway, Suite/Room 407, New York, New York 10012.

15.    Defendant Kalshi Inc. is, upon information and belief, a Delaware corporation with its principal place of business at 594 Broadway, Suite/Room 407, New York, New York 10012.

16.    Defendant Kalshi Klear LLC is, upon information and belief, a Delaware limited liability company with its principal place of business in New York and serves as the clearing entity for Kalshi market transactions.

17.    Defendant Kalshi Klear Inc. is, upon information and belief, a Delaware corporation and the sole member of Kalshi Klear LLC.

18.    Defendant Kalshi Trading LLC is, upon information and belief, a Delaware limited liability company with its principal place of business at 594 Broadway, Suite/Room 407, New York, New York 10012 and acted as a market maker and/or participant in the subject market.

## CLASS ACTION ALLEGATIONS

19.    Plaintiff brings this action individually and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all others similarly situated.

20.    Plaintiff seeks to represent the following Class:

> All persons in the United States who purchased "Yes" contracts and/or "No" contracts on Kalshi in any market concerning whether Ali Khamenei would be out as Supreme Leader by a stated deadline, and whose positions were settled, reimbursed, credited, adjusted, or otherwise affected by Kalshi's application of a so-called "death carveout," "scalar settlement," "last-traded fair price," or similar non-binary settlement methodology following the reported death of Ali Khamenei.

21.    In the alternative, Plaintiff seeks to represent the following subclass:

4

All persons in the United States who purchased "Yes" contracts on Kalshi in the market "Ali Khamenei out as Supreme Leader before April 1, 2026?" and whose contracts were not paid as full winning "Yes" contracts following the reported death of Ali Khamenei.

22.     Excluded from the Class are Defendants; any parent, subsidiary, affiliate, officer, director, or employee of Defendants; any entity in which Defendants have a controlling interest; any judicial officer assigned to this case and that judicial officer's immediate family; and the legal representatives, successors, and assigns of any such excluded person or entity.

23.     Plaintiff reserves the right to amend, modify, expand, narrow, or refine the Class definition and to propose additional subclasses after discovery and further investigation.

24.     This action is properly maintainable as a class action under Rule 23(a)(1) because the Class is so numerous that joinder of all members is impracticable. Upon information and belief, the number of affected persons is at least in the hundreds and likely in the thousands, and those persons are geographically dispersed throughout the United States.

25.     This action is properly maintainable as a class action under Rule 23(a)(2) because there are questions of law and fact common to the Class, including, without limitation:

a.  whether Defendants marketed the subject contracts as standard binary event contracts;
b.  whether Defendants represented, expressly or by implication, that if Ali Khamenei ceased serving as Supreme Leader before the stated deadline, "Yes" contracts would resolve as winning contracts;
c.  whether Defendants failed to adequately disclose any alleged death carveout, scalar settlement provision, last-traded fair price methodology, or similar non-binary settlement mechanism;
d.  whether any such disclosure was clear, conspicuous, and sufficiently presented to reasonable retail users before purchase;
e.  whether Defendants' conduct constituted breach of contract;
f.  whether Defendants breached the implied covenant of good faith and fair dealing;
g.  whether Defendants made material misrepresentations and/or omissions in connection with the marketing, sale, and settlement of the contracts;

h.   whether Defendants engaged in deceptive acts or practices;

i.   whether Defendants were unjustly enriched;

j.   whether Plaintiff and Class members were injured by Defendants' conduct; and

k.   the proper measure of damages, restitution, declaratory relief, injunctive relief, and other relief.

26.    This action is properly maintainable as a class action under Rule 23(a)(3) because Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all Class members, purchased contracts in the subject market or related Khamenei markets and was subjected to the same or substantially similar market language, disclosures, omissions, settlement methodology, reimbursement scheme, and post-settlement explanations.

27.    This action is properly maintainable as a class action under Rule 23(a)(4) because Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests antagonistic to the interests of the Class, and Plaintiff has retained counsel experienced in complex litigation, consumer litigation, and class action litigation.

28.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy under Rule 23(b)(3) because the damages suffered by many Class members, while meaningful, are not large enough to make individual lawsuits economically practical, and the prosecution of separate actions would create a risk of inconsistent rulings and needless duplication of effort and expense.

29.    Common questions of law and fact predominate over any questions affecting only individual Class members because Defendants' liability arises from standardized conduct, including common market language, common rules and linked rule materials, common omissions, uniform settlement practices, and common post-settlement statements and reimbursement protocols.

30. Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making declaratory and injunctive relief appropriate with respect to the Class as a whole under Rule 23(b)(2).

## FRAUD-BASED ALLEGATIONS

31. Plaintiff repeats and realleges the preceding paragraphs as though fully set forth herein.

32. Plaintiff's fraud-based claims are pleaded with particularity to the extent presently available prior to discovery.

33. Defendants, through their Kalshi platform, market pages, user interface, summaries of market terms, linked contract materials, settlement notices, customer support messages, and follow-up account communications, represented to Plaintiff and Class members that the relevant Khamenei contracts were event contracts tied to whether Ali Khamenei would be "out as Supreme Leader" by a stated deadline.

34. Defendants' representations, as presented to reasonable retail users, conveyed that if Ali Khamenei ceased serving as Supreme Leader before the listed deadline, "Yes" contracts would resolve as winning contracts and "No" contracts would resolve as losing contracts, subject only to ordinary binary settlement.

35. Defendants omitted, concealed, obscured, minimized, and/or failed to clearly and conspicuously disclose that if Ali Khamenei left office solely by reason of death, Defendants would not necessarily settle the market as a normal binary "Yes" winner, but instead might invoke a so-called "death carveout," "scalar settlement," "last-traded fair price," or other non-binary methodology that could materially reduce the payout to holders of "Yes" contracts.

7

36.     Any such alleged limitation was material because it fundamentally altered the economic bargain presented to users. A reasonable retail trader deciding whether to buy a "Yes" contract would attach significance to the fact that even if the stated event occurred—namely, that Ali Khamenei was no longer Supreme Leader before the deadline—the contract might still not pay as a standard winning "Yes" contract.

37.     Defendants knew or recklessly disregarded that reasonable users would understand the market according to its plain-language framing and would not expect an undisclosed or inadequately disclosed exception swallowing the core bargain.

38.     Defendants further knew, or recklessly disregarded, that their disclosures were inadequate because, after the challenged settlement, Defendants admitted in substance that many users did not have a full understanding of the rules and that Kalshi needed to improve how those rules were surfaced.

39.     After the reported death of Ali Khamenei, Defendants made additional materially misleading statements to Plaintiff and Class members, including but not limited to statements that:

   a. the market did not settle as a standard Yes/No outcome;
   b. the market settled to a scalar value of $0.29 per contract;
   c. positions acquired before death would be paid out based on the last-traded fair price before death;
   d. positions acquired after death at a higher price would be reimbursed up to cost; and
   e. the relevant price at 1:14 a.m. was 2 cents for Yes and 98 cents for No.

40.     These statements were misleading because they failed to clearly explain the governing methodology, were inconsistent with one another, and were inconsistent with the market's plain-language presentation and the reasonable expectations Defendants themselves created.

8

41.    Defendants intended that Plaintiff and Class members rely on the market presentation, the user interface, and Defendants' settlement communications in deciding whether to enter positions, maintain positions, or refrain from closing positions.

42.    Plaintiff in fact relied on Defendants' representations and omissions when purchasing his contracts and when expecting the market to settle as a full "Yes" winner after the event allegedly occurred.

43.    As a direct and proximate result of Defendants' misrepresentations and omissions, Plaintiff and Class members suffered economic injury, including but not limited to loss of contract value, fees, opportunity costs, and the loss of the benefit of the bargain.

## FACTUAL ALLEGATIONS

### A. Kalshi's Khamenei Market

44.    Kalshi offered a prediction market asking whether Ali Khamenei would be out as Supreme Leader before specified dates, including April 1, 2026.

45.    The market was presented to users as an event contract in which users could buy "Yes" or "No" contracts tied to whether Khamenei would leave office before the listed deadline.

46.    On the market page and in user-facing descriptions, Defendants communicated, expressly or by clear implication, that if Ali Khamenei left office before the relevant deadline, the market would resolve to "Yes." Nothing in the ordinary presentation of the market alerted reasonable users that the occurrence of death could trigger a different payout system under which "Yes" holders would not receive full winning-contract value.

47.    Plaintiff and Class members relied on the plain-language presentation of the market and the ordinary meaning of "out as Supreme Leader" or "leaves office."

9

**B. Plaintiff's Purchase and Reliance**

48.    Plaintiff purchased 1,436 "Yes" contracts in the Khamenei market for the "before April 1, 2026" contract.

49.    Plaintiff's total outlay was approximately $574.75, although Kalshi also referenced $598.59 including fees in its communications with Plaintiff.

50.    Plaintiff purchased those contracts because he understood that if Khamenei ceased holding office before April 1, 2026, the "Yes" contracts would pay as winning contracts.

51.    Plaintiff did not understand, and no reasonable retail user would have understood from the market's plain presentation, that Defendants would later invoke a non-binary settlement formula based on an asserted death carveout, scalar value, last-traded fair price, or other methodology that would deny full payout even though the very event being wagered on— Khamenei being out as Supreme Leader—had allegedly occurred.

52.    To the extent Defendants contend that such a carveout appeared somewhere in summary rules, linked terms, contract documents, PDFs, hover text, or other secondary materials, that alleged limitation was not adequately, conspicuously, clearly, or intelligibly disclosed to Plaintiff and Class members at the point of sale and was insufficient to overcome the contrary impression created by the market's plain-language framing.

**C. Khamenei's Reported Death and Kalshi's Settlement**

53.    After public reports that Khamenei had died, Plaintiff and Class members expected the market to resolve in favor of "Yes" holders, consistent with the market's plain-language framing.

54.    Instead, Kalshi informed Plaintiff that the market "didn't settle as a standard Yes/No outcome" and instead settled to a scalar value of $0.29 per contract.

55.    Kalshi told Plaintiff that:

a.   he held 1,436 Yes contracts;
b.   his cost was $574.75;
c.   the settlement result was $0.29 per contract;
d.   the total payout was $416.44; and
e.   his loss after fees was approximately -$182.15.

56.    Kalshi further represented that this payout had already been credited to Plaintiff's account.

57.    Kalshi also represented that "scalar settlements happen under specific rule conditions" and that both Yes and No holders receive proportional amounts based on the settlement value.

58.    In subsequent communications, Kalshi further stated:

a.   fees would be refunded for all transactions in the market;
b.   if a user had a position acquired before Khamenei died, that position would be paid out based on the last-traded fair price before death;
c.   if a user had a position acquired after death that cost more than the above price, Kalshi would reimburse the difference so the user would be made whole; and
d.   "the price at 1:14 AM was 2c for Yes and 98c for No."

59.    The challenged conduct was not limited to Plaintiff alone. Based on Defendants' own public

60.    and private communications, the challenged settlement methodology, reimbursement approach, and fee-refund treatment were applied across the market to numerous users, making the conduct standardized and classwide in nature.

61.    These explanations are inconsistent, confusing, and materially misleading because they suggest multiple different settlement methodologies, fail to identify which methodology actually governed, and confirm that users were not given a fair and understandable explanation of how the market would be settled if the triggering event occurred by death.

11

62.    Defendants' own post-settlement statements indicate that users did not have a full understanding of the settlement rules and that Defendants needed to do more to surface those rules, thereby confirming that the relevant limitation was not adequately disclosed in the first place.

63.    Defendants either: (a) failed to clearly present the actual bargain being offered; (b) failed to adequately disclose the true settlement methodology; (c) applied an after-the-fact interpretation inconsistent with the market's plain presentation; or (d) some combination of the foregoing.

## D. Defendants' Conduct Injured Plaintiff and the Class

64.    Plaintiff and Class members paid real money for contracts Defendants presented as event contracts tied to whether Khamenei would be out of office before April 1, 2026.

65.    When that event allegedly occurred by death, Defendants refused to settle those contracts as standard winning "Yes" positions.

66.    Plaintiff and Class members received less than the benefit of their bargain and were deprived of the payout they reasonably expected.

67.    Defendants benefitted from retaining trading volume, fees, float, and other financial advantages stemming from their opaque and inadequately disclosed settlement methodology.

**<u>FIRST CAUSE OF ACTION</u>**
**Breach of Contract**

68.    Plaintiff repeats and realleges paragraphs 1 through 67 as though fully set forth herein.

69.    A valid contract existed between Plaintiff and Defendants, and between Class members and Defendants, when Plaintiff and Class members opened and funded Kalshi accounts and purchased the subject contracts.

70.    Defendants offered event contracts based on whether Khamenei would be out as Supreme Leader before April 1, 2026, and Plaintiff and Class members accepted that offer by purchasing "Yes" contracts and paying consideration.

71.    The operative market presentation communicated that if Khamenei left office before the deadline, the market would resolve to "Yes."

72.    Khamenei's reported death, and thus departure from office, before April 1, 2026 satisfied the event condition as reasonably understood by Plaintiff and Class members.

73.    Defendants breached the contract by refusing to settle Plaintiff's and Class members' "Yes" contracts as winning "Yes" contracts and instead imposing an alternative settlement methodology that was not adequately disclosed.

74.    As a direct and proximate result, Plaintiff and Class members sustained damages in an amount to be determined at trial, including but not limited to the difference between the promised payout and the amount actually paid, together with fees, costs, interest, and all other recoverable sums.

## SECOND CAUSE OF ACTION
### Breach of the Implied Covenant of Good Faith and Fair Dealing

75.    Plaintiff repeats and realleges paragraphs 1 through 67 as though fully set forth herein.

76.    Every contract under New York law includes an implied covenant of good faith and fair dealing.

77.    Defendants violated that covenant by marketing the Khamenei market as a straightforward event contract, accepting Plaintiff's and Class members' purchases, and then using an inadequately disclosed carveout and opaque settlement methodology to deprive them of the fruits of the bargain.

13

78. Defendants further acted in bad faith by issuing inconsistent, confusing, and post hoc explanations concerning whether the market settled according to a scalar value, last-traded fair price, reimbursement framework, or some mixture of all three.

79. Plaintiff and Class members were damaged thereby.

**THIRD CAUSE OF ACTION**
**Fraudulent Inducement, Fraud by Omission, and Intentional Misrepresentation**

80. Plaintiff repeats and realleges paragraphs 1 through 67 as though fully set forth herein.

81. Defendants represented, expressly and/or by necessary implication, that the Khamenei market would resolve to "Yes" if Ali Khamenei was out as Supreme Leader before the contract deadline.

82. Defendants also omitted, concealed, obscured, and/or failed to clearly disclose that if Ali Khamenei left office solely by reason of death, Defendants would not necessarily settle the contract as a standard winning "Yes" contract and instead might impose a materially different and economically inferior payout methodology.

83. Defendants' representations and omissions were false and misleading, and concerned material facts.

84. Defendants knew, or recklessly disregarded, that reasonable retail users would rely on the market's plain-language framing and would not understand any alleged carveout unless it was clearly and conspicuously disclosed.

85. Defendants had superior knowledge concerning the actual settlement methodology, the intended treatment of death-related outcomes, and the manner in which the market would be administered, and such facts were not reasonably available to Plaintiff and Class members.

14

86.    Defendants intended that Plaintiff and Class members rely on their market presentation and purchase contracts on the Kalshi platform.

87.    Plaintiff and Class members justifiably relied on Defendants' representations and omissions when entering their positions and when refraining from taking other action to avoid or mitigate loss.

88.    As a direct and proximate result of Defendants' fraud, fraudulent omission, and intentional misrepresentation, Plaintiff and Class members sustained damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### Fraudulent Concealment / Fraud by Omission

89.    Plaintiff repeats and realleges paragraphs 1 through 67 as though fully set forth herein.

90.    Defendants concealed and failed to disclose material facts concerning the true settlement methodology applicable if Ali Khamenei left office by death.

91.    Defendants had a duty to disclose these facts because:

   a. Defendants possessed superior and exclusive knowledge of facts not known to Plaintiff and Class members;
   b. Defendants actively created a misleading impression through the way the market was framed and presented; and
   c. Defendants made partial disclosures that were materially misleading absent full disclosure of the omitted facts.

92.    The omitted facts were material because a reasonable user would have considered them important in deciding whether to purchase, hold, or sell the subject contracts.

93.    Plaintiff and Class members were unaware of the concealed facts and could not reasonably have discovered them through ordinary diligence from the way the market was presented.

15

94.    Defendants intentionally concealed these facts with the intent to induce Plaintiff and Class members to purchase and hold contracts.

95.    Plaintiff and Class members reasonably relied on the incomplete and misleading information provided by Defendants.

96.    As a direct and proximate result, Plaintiff and Class members suffered damages.

## FIFTH CAUSE OF ACTION
### Negligent Misrepresentation

97.    Plaintiff repeats and realleges paragraphs 1 through 67 as though fully set forth herein.

98.    In the course of their business, Defendants supplied information to Plaintiff and Class members for their guidance in purchasing and trading event contracts.

99.    Defendants had a duty to use reasonable care to ensure that the market terms, disclosures, and settlement conditions were accurate, complete, and not misleading.

100.    Defendants breached that duty by presenting the market in a manner that omitted, obscured, or inadequately disclosed the death-related settlement limitation and by providing inconsistent explanations after the fact.

101.    Plaintiff and Class members reasonably relied on Defendants' representations and omissions.

102.    Plaintiff and Class members suffered damages as a result.

## SIXTH CAUSE OF ACTION
### Violation of New York General Business Law § 349

103.    Plaintiff repeats and realleges paragraphs 1 through 67 as though fully set forth herein.

16

104.     Defendants engaged in consumer-oriented conduct by marketing and selling event contracts to retail users through an online platform.

105.     Defendants' acts and practices were deceptive and misleading in material respects, including by:

a.   presenting the market as a straightforward "out as Supreme Leader" contract while failing to clearly disclose a death carveout or alternative non-binary settlement methodology;

b.   using language that led reasonable consumers to expect a full "Yes" payout if Khamenei was no longer in office before the deadline;

c.   failing to conspicuously disclose that death would trigger a different settlement rule; and

d.   issuing contradictory post-settlement explanations.

106.     Defendants' own post-settlement communications acknowledged that many users did not understand the rules and that Kalshi could do more to improve how those rules were surfaced.

107.     Plaintiff and Class members were injured by these deceptive acts and practices in that they paid money for contracts that were not settled as a reasonable consumer would have understood from Kalshi's market presentation.

108.     Plaintiff and Class members are entitled to actual damages, statutory damages where applicable, injunctive relief, attorneys' fees where authorized, and all other relief permitted by law.

## SEVENTH CAUSE OF ACTION
### Unjust Enrichment

109.     Plaintiff repeats and realleges paragraphs 1 through 67 as though fully set forth herein.

110.     Plaintiff and Class members conferred benefits on Defendants by paying for the challenged contracts and associated fees.

111.   Defendants were enriched by retaining Plaintiff's and Class members' funds and the benefits of those transactions while failing to provide the payout they reasonably expected.

112.   Under principles of equity and good conscience, Defendants should not be permitted to retain those benefits.

113.   Plaintiff and Class members seek restitution and disgorgement in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION
### Declaratory Judgment
(28 U.S.C. §§ 2201–2202)

114.   Plaintiff repeats and realleges paragraphs 1 through 67 as though fully set forth herein.

115.   An actual, present, and justiciable controversy exists between Plaintiff and Defendants, and between Class members and Defendants, concerning the proper interpretation of the Khamenei market contract and whether Defendants were permitted to refuse standard "Yes" settlement based on the alleged death carveout, scalar methodology, last-traded-price methodology, or any combination thereof.

116.   Plaintiff seeks a declaration that Defendants' user-facing market presentation did not adequately disclose the challenged settlement limitation and that Defendants' settlement of Plaintiff's and Class members' contracts was improper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, respectfully demands judgment against Defendants as follows:

A. Certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B. Appointing Plaintiff as Class Representative and appointing undersigned counsel as Class Counsel;

C. Awarding Plaintiff and Class members compensatory damages, actual damages, statutory damages where available, restitution, disgorgement, and all other equitable and legal monetary relief allowed by law;

D. Awarding pre-judgment and post-judgment interest;

E. Awarding punitive damages to the extent permitted by law;

F. Awarding attorneys' fees and costs to the extent permitted by law;

G. Declaring that Defendants' settlement methodology for the subject contracts was improper and/or inadequately disclosed;

H. Enjoining Defendants from offering, marketing, or settling comparable event contracts without clear, conspicuous, and consumer-facing disclosure of all material carveouts, exceptions, alternative payout rules, and settlement limitations; and

I. Awarding such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  March 24, 2026

By:      /s/Brett R. Cohen_____
         Brett R. Cohen
         **LEEDS BROWN LAW, P.C.**
         One Old Country Road, Suite 347
         Carle Place, New York 11514
         Tel: (516) 873-9550
         bcohen@leedsbrownlaw.com

         Daniella Levi

19

**DANIELLA LEVI & ASSOCIATES, P.C.**
159-16 Union Turnpike, Suite 200
Fresh Meadows, New York 11366
Tel: (718) 380-1010
daniellalevi@levilawny.com

***Counsel for Plaintiff and the Proposed Class***